#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID T. J. Sr.,[1]　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　**Plaintiff,**　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | **CIVIL ACTION** |
| v.　　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　　) | No. 21-2503-JWL |
| KILOLO KIJAKAZI,　　　　　　　　　　 ) | |
| Acting Commissioner of Social Security,　) | |
| 　　　　　　　　　　　　　　　　　　　　) | |
| 　　　　**Defendant.**　　　　　　　　　　) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.　　Background**

Plaintiff protectively filed an application for SSI benefits on July 17, 2019. (R. 30, 281, 284). After exhausting administrative remedies before the Social Security

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating Listings 1.04 and 11.14 and in assessing residual functional capacity (RFC).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

2

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

## II. Listed Impairments

Plaintiff argues the ALJ erred in failing to find his condition meets or equals Listings 1.04 and 11.14. Plaintiff argues he

> shows that he meets a Listing, showing objective medical evidence that he has obesity, edema, and he is prescribed the use of a cane. ([R.] 385, 390, 398, 440, 469). Plaintiff has further showed that he suffers from peripheral neuropathy, showing medical evidence of his severe limitation in physical functioning, and at least the a [sic] marked limitation in understanding, remembering, and applying information as reported by Dr. Nelson and Dr. Neufeld.

(Pl. Br. 12). He relies on Dr. Nelson's alleged finding he "could only understand and remember simple instructions," and Dr. Neufeld's alleged findings he has "'difficulties with recall,' 'impaired social skills,' 'struggles with concentration, persistence and pace,' and Plaintiff reports inability to retain information effectively." Id. at 12-13 (allegedly quoting R. 421-22, 423, 449). Plaintiff also relies on his testimony that he has difficulty standing and completing chores and that his legs and feet were numb up to his calves and

4

feel like he is wearing boots. (Pl. Br. 13). He argues the "misunderstanding, misinterpretation, and substitution of medical judgment by the ALJ is not substantial evidence, and is merely an attempt by the ALJ to make the evidence support his chosen conclusion." Id.

Plaintiff makes similar argument related to his physical impairments, noting soft tissue swelling, edema, diabetic neuropathy, and findings of the state agency physicians, Dr. Uddin, and Dr. Amin, who allegedly "found that Plaintiff was only able to squat and rise with 'moderate difficulty,' and could not walk on his heels and toes, hop on one foot, tandem walk, or 'rise from a sitting position without assistance.'" Id. at 15 (quoting R. 429). Plaintiff concludes, "Both through the record presented, and by Plaintiff's testimony, Plaintiff has shown on a criteria-by-criteria [sic] basis that his impairment medically meets or equals a listing" and the ALJ erred as a matter of law. Id.

The Commissioner argues Plaintiff did not explain how his condition meets or equals Listing 11.14A and did not point to evidence that demonstrates a marked limitation in physical functioning or a marked limitation in one of the four broad areas of mental functioning—the paragraph B criteria—as required by Listing 11.14B. (Comm'r Br. 13-15). She concludes that Plaintiff has not demonstrated harm from any alleged error because the evidence does not show that each of the criteria of any Listing is met or equaled. Id. at 15.

### A.     Standard for Evaluating Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 416.925(a); see also, id.,

Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)).  The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Medical equivalence to a listing may be established by showing that the claimant's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

### 1. Listing 1.04

On July 17, 2019, when Plaintiff applied for SSI, Listing 1.04 stated:

1.04   Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App.1 § 1.04 (2019).[2]

### 2. Listing 11.14

---

[2] The court notes the Listing of Impairments no longer includes Listing 1.04. The Musculoskeletal Disorders have been reclassified within new Listings 1.15 through 1.23. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 1.15-1.23 (2022).

> 11.14 Peripheral neuropathy, characterized by A or B:
>
> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
>> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 2. Interacting with others (see 11.00G3b(ii)); or
>>
>> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>
>> 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.14.

### **B.**     **The ALJ's Findings**

At step two of the sequential evaluation process the ALJ found Plaintiff had severe impairments of diabetes mellitus, obesity, diabetic neuropathy, depression, and mild unspecified neurocognitive disorder. (R. 32) (finding no. 2). He found Plaintiff has additional impairments which individually are not severe including chronic obstructive pulmonary disease, dyslipidemia, history of gout, and hypertension. The ALJ found impairment of the back was not a medically determinable impairment on the record in this case. (R. 33). He found the record showed Plaintiff "has not been diagnosed with any back impairment or treated for any back impairment." Id.

In his step three evaluation the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 CFR Part 404." (R. 33) (finding no. 3, bold omitted). The ALJ did not specifically discuss any Listing for physical impairments, but he discussed Plaintiff's mental impairments and found he did not meet or medically equal the criteria of Listing 12.02 and 12.04 because he did not have marked limitations in two or an extreme limitations in one of the four broad mental functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself—the paragraph B criteria. Id. He also found Plaintiff's condition does not satisfy the paragraph C criteria of Listing 12.04.

> The ALJ stated his findings regarding the paragraph B criteria:
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant exhibited some deficits in his memory functioning (Exhibit C8F). However, he can complete tasks such as playing the piano, that show he does not have significant deficits in this area.
>
> In interacting with others, the claimant has a mild limitation. He is able to interact appropriately with his health care providers. He is able to spend time with his family.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. He exhibited some deficits in his attention and concentration during the consultative examination. However, he can concentrate to use the computer and drive.
>
> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant continues to maintain his own self-care tasks and grossly normal activities of daily living. The record does not support episodes of significant emotional dysregulation or decompensation.

Id.

### C. Analysis

Plaintiff has shown no error in the ALJ's finding his condition does not meet or medically equal the criteria of a Listing. At step three of the sequential evaluation process the burden is on the claimant to show that his condition meets or medically equals each and all of the criteria of a particular Listing and he has not done so here. The ALJ found that Plaintiff's alleged back impairment is not medically determinable based on the record here because the record does not show that he has been diagnosed or treated for any back impairment. (R.33). As to Listing 1.04, Plaintiff makes virtually no argument that the criteria are met. He says nothing about the criteria of the introductory paragraph of the Listing and merely notes the requirement that he "show; 'evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication'" but does not point to evidence that the criteria of any of the three disorders are met as quoted above, much less to suggest evidence that medically equals any criterion that is not met.

His treatment of Listing 11.14 is only marginally better. As to Listing 11.14 Plaintiff argues the evidence shows "he has obesity, edema, and he is prescribed the use of a cane," and "he suffers from peripheral neuropathy, showing medical evidence of his severe limitation in physical functioning, and at least the a [sic] marked limitation in understanding, remembering, and applying information as reported by Dr. Nelson and Dr. Neufeld." (Pl. Br. 12) (citing R. 385, 390, 398, 421-22, 440, 449, 469).

This argument appears to suggest Plaintiff meets or equals the criteria of Listing 11.14B. However, the Listing cites to specific explanations of "marked limitation," 20 C.F.R., Pt. 404, Subpt. P, App 1 § 11.00G2; "physical functioning," id., at 11.00G3a; and

"understanding, remembering, or applying information," id., at 11.00G3b(i); and Plaintiff does not explain how his condition meets or medically equals any of these criteria. Plaintiff appeals to the opinions of Dr. Nelson and Dr. Neufeld to support his argument he has marked limitation in understanding, remembering, or applying information and those opinions, perhaps marginally, support such a finding.

The ALJ found Dr. Nelson's opinion only partially persuasive because her examination showed few deficits in his functioning, her opinion on Plaintiff's social functioning was equivocal, and she did not provide specific functional limitations. (R. 37). Plaintiff cites Dr. Nelson's opinion to support his argument but does not show error in the ALJ's reasons for finding the opinion unpersuasive and thereby seeks merely to have the court substitute its judgment for that of the ALJ. As noted above, it may not do so. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. The ALJ found Dr. Neufeld's opinion only somewhat persuasive because "the opinion that [Plaintiff] is limited to 1-2 step tasks is not supported by the fact he can engage in complex tasks such as playing the piano, working with electronics, and driving." (R. 37). Plaintiff contests this reason by arguing:

> The ALJ relies consistently on the unsupported, unexamined, uncorroborated idea that Plaintiff "plays the piano." There is no evidence in the record that Plaintiff is capable of playing the piano or using the computer in a complex manner. In his function report, Plaintiff reported that music was his main hobby, but states that he does not do it as much anymore because his "brain does not work as well as it use[d] to," and "I forget a lot."

(Pl. Br. 16) (quoting R. 342). The court understands this to argue not that Plaintiff does not play the piano or work with electronics but that he does not do so "in a complex

11

manner." Id. However, the record and common sense does not support such an assertion. Even giving Plaintiff the benefit of the doubt and crediting his assertion that he is not able to play the piano or work with a computer as he previously did, the evidence supports the ALJ's finding.

Playing a piano is intrinsically an activity requiring more than 1-2 step tasks. Moreover, as the Commissioner points out, Plaintiff stated music and electronics were his main hobbies. (R. 342). Dr. Nelson noted Plaintiff "likes to play the piano and work with electronics. He spoke extensively about his skills as a computer programmer." Id. 421. Plaintiff also told Dr. Neufeld he played the piano and spends time on the computer although he also noted it hurts him to play and his hands are numb. Id. 447. Although Plaintiff asserts limitations in his playing the piano or working on the computer, the record supports the ALJ's findings. To the extent Plaintiff relies on his allegations of limiting symptoms, the court notes the ALJ found his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 35) and while Plaintiff relies on his allegations, he does not show that the ALJ's finding in this regard is erroneous.

Plaintiff next argues he "is clearly physically limited in his ability to ambulate effectively, or [has] a 'disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities,' due to obesity, edema, or neuropathy." (Pl. Br. 15) (quoting without citation Listing 11.14A). Plaintiff does not include in his

quote or even acknowledge the Listing cites the definitions of "disorganization of motor function," 20 C.F.R., Pt. 404, Subpt. P, App.1, § 11.00D1, and "extreme limitation." Id. at § 11.00D2. He does not explain how his condition causes disorganization of motor function, or an extreme limitation in one of the abilities stated in the Listing, and he does not indicate which two extremities have such disorganization of motor function. To the extent Plaintiff relies on his assertion Dr. Amin found he could not "rise from a sitting position without assistance." (Pl. Br. 15) (quoting R. 429), his assertion is incorrect. While Plaintiff's quotation is technically verbatim, he did not quote Dr. Amin's entire statement—"The claimant was able to rise from a sitting position without assistance." (R. 429) (emphasis added by the court). Plaintiff has not shown that his condition meets or medically equals the criteria of any Listing.

**III.    RFC Assessment**

Plaintiff claims the ALJ erred in his RFC assessment "by failing to provide a reasonable basis, or a narrative discussion backed by substantial evidence, for his conclusion that Plaintiff was not disabled" (Pl. Br. 15) and that such a failure "will be deemed to be unsupported by substantial evidence." Id., at 16 (citing Southard v. Barnhart, No. 02-7102, 72 F. App'x. 781, 784-85 (10th Cir. July 28, 2003)). The court finds Plaintiff's argument without merit.

The ALJ stated his RFC findings on page 5 of his decision. (R. 34) (finding no. 4). He then explained the standard he applied in reaching his findings, noted Plaintiff's allegations of symptoms, and found those allegations not consistent with the record evidence. Id. at 34-35. He summarized the record evidence, and the medical opinions

13

and the prior administrative medical findings (PAMFs) and explained therein his RFC assessment and how persuasive he found each of the medical opinions and PAMFs. Id. at 35-38. That is the ALJ's narrative discussion and therein he cited the record evidence he relied upon to reach his RFC assessment and his findings regarding the persuasiveness of the opinion evidence. The court finds this discussion reasonable and supported by substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401.

To the extent Plaintiff contends it was error to "rel[y] consistently on the unsupported, unexamined, uncorroborated idea that Plaintiff 'plays the piano,'" uses a computer, or works with electronics (Pl. Br. 16-17), that argument has been rejected for the reasons noted above. To the extent Plaintiff relies upon Dr. Nelson's notes or opinions, the court has already found the ALJ provided a valid rationale to discount Dr. Nelson's opinion. Plaintiff's reliance on Dr. Uddin's notes or opinions are equally without merit. The ALJ stated he found Dr. Uddin's opinion not persuasive because he provided "no <u>functional</u> limitations and the limitations he indicates are based <u>solely</u> on the reports of the claimant." (R. 37) (emphases added by the court). As the ALJ suggests, Dr. Uddin stated,

> Based on today's examination and the objective evidence, I believe the claimant <u>may</u> be limited in his ability to sit, walk, stand, [and] lift/carry objects <u>based on</u> his <u>reported limitations</u>. However, I noted no significant objective limitations with the exception of some <u>minimal</u> range of motion deficits.

14

(R. 442) (emphases added by court). The ALJ is by no means constrained by the doctor's statement of what may be Plaintiff's limitations and which he explicitly based on the Plaintiff's reported limitations. He properly rejected this equivocal opinion.

As Plaintiff suggests, his daily activities do not prove he is able to perform competitive work. However, it is not the ALJ's burden to prove Plaintiff can work, it is Plaintiff's burden to prove his limitations are greater than those assessed. He has not done so here. The ALJ noted daily activities performed by Plaintiff somewhat tending to suggest he could perform up to the limitations assessed. The ALJ then explained,

> Overall, the claimant's descriptions of his daily activities are essentially normal. His activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation that preclude him from work activities. Although the claimant may not be able to engage in all of the activities that he did in the past and it may take him longer to perform the tasks, he is more active than would be expected if all of his allegations were consistent with the record.

(R. 36). This is an appropriate and reasonable explanation for discounting Plaintiff's allegations of disabling limitations.

In his final argument Plaintiff states he is 60 years old, the ALJ found him capable of medium work, and had the ALJ limited him to light work or less he would have been found disabled. (Pl. Br. 22). While all of this is true, it does not compel a finding of disability unless anyone who is 60 or over is incapable of medium work or unless the record demonstrates Plaintiff is incapable of medium work. Plaintiff has not shown either of these propositions to be compelled by the evidence or by some legal or medical authority admissible here. Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 5, 2023, at Kansas City, Kansas.

s/ John W. Lungstrum
_____

**John W. Lungstrum**
**United States District Judge**